UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

GRAVITY DEFYER MEDICAL
TECHNOLOGY CORP., *et al.,*

    Defendants.

Case No. 1:22-cv-01464-RDM

**PLAINTIFF FEDERAL TRADE COMMISSION'S
MEMORANDUM IN OPPOSITION TO DEFENDANTS
GRAVITY DEFYER MEDICAL TECHNOLOGY CORPORATION'S
AND ALEXANDER ELNEKAVEH'S RENEWED MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

BACKGROUND...................................................................................................1

ARGUMENT........................................................................................................5

    I.    Legal Standard for Rule 12(b)(6) Motions and Matters the Court May Consider......................................................................................................5

        A.  Legal Standard for Rule 12(b)(6) Motions.................................5

        B.  Matters the Court May Consider...................................................6

            1.  Selected Portions of Defendants' Memorandum (Dkt. 15-1) Must Be Excluded................................................................7

            2.  The Court Must Exclude Exhibits B and D.........................8

    II.   Counts I-IV State Claims Upon Which Relief Can Be Granted..................10

        A.  Counts III and IV State Claims Under Sections 5(a) and 12 of the FTC Act ....................................................................................10

        B.  Defendants' First Amendment Arguments Do Not Provide a Basis for Dismissing Complaint Counts II-IV.......................................15

        C.  Counts I and II Adequately Allege Violations of Section 5(*l*) and Counts III-IV State Claims for Violations of Sections 5(a) and 12..........19

            1.  Count I Adequately Alleges that Defendants Have Violated Part III of the Commission Order and Section 5(*l*) of the FTC Act.....20

            2.  Counts II-IV State Claims for Relief Notwithstanding Defendants' Argument That They Have Accurately Reported Study Results..23

    III.  The Commission Order is Enforceable Under Section 5(*l*), Applies to Defendants' Alleged Conduct, and is Enforceable Against Both Defendants........................................................................................25

        A.  The Commission Order is Enforceable Under Section 5(*l*)....................25

        B.  The Plain Language of Parts III and IV of the Commission Order Apply to Any Product, Including Footwear ...........................................29

        C.  Gravity Defyer Can Be Held Liable for Violating the Commission Order.....................................................................................31

CONCLUSION..................................................................................................36

**TABLE OF AUTHORITIES**

*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052 (D.C. Cir. 2007) .................................................. 7

*ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348 (11th Cir. 2017) ............................ 35

*AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021) .......................................................... 8

*Andueza Croce v. Garland*, No. 21-00264, 2021 WL 5206106 (D.D.C. Nov. 9, 2021) .............. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 5, 15

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) .............................. 5, 6, 21

*Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) ................................................................ 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 5

*Bristol-Myers Co. v. FTC*, 738 F.2d 554 (2nd Cir. 1984) .................................................. 13, 14

*Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152 (D.D.C. 2013) ................................. 21

*Cent. Hudson Gas & Elec. Corp. v. Publ. Serv. Comm'n*, 447 U.S. 557 (1980) ............. 15, 16, 17

*City of Salisbury v. FERC*, 36 F.4th 1164 (D.C. Cir. 2022) ...................................................... 26

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) .............................. 6

*FTC v. Acquinity Interactive*, LLC, 2021 WL 4840585 (S.D. Fla. Sept. 29, 2021) .............. 34, 35

*FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119 (D. Conn. 2008) ..................................... 22

*FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35 (D.C. Cir. 1985) ............................. 17

*FTC v. Carter*, 464 F. Supp. 633 (D.D.C. 1979) ...................................................................... 19

*FTC v. COORGA Nutraceuticals Corp.*, 201 F. Supp. 3d 1300 (D. Wyo. 2016) ....................... 11

*FTC v. Data Med. Cap., Inc.*, No. 99-1266, 2010 WL 1049977 (C.D. Cal. Jan. 15, 2010) ........ 34

*FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) ......................................... 12, 17

*FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202 (D. Mass. 2009) ............................. 17

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ............................................................................... 11

*FTC v. Grant Connect, LLC*, 763 F.3d 1094 (9th Cir. 2014) .................................................... 31

*FTC v. Mytel Int'l, Inc.*, No.2:87-CV-07259, 2022 WL 3350391 (C.D. Cal. Aug. 11, 2022)..... 33

*FTC v. Nat'l Lead Co.*, 352 U.S. 419 (1957)............................................................................. 31

*FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008).................................... 17

*FTC v. Neiswonger*, 494 F. Supp. 2d 1067 (E.D. Mo. 2007), *aff'd*, 580 F.3d 769
   (8th Cir. 2009)....................................................................................................................... 34

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)............................................................ 11

*FTC v. Pharmtech Rsch,, Inc.*, 576 F. Supp. 294 (D.D.C. 1983) ............................................. 15

*FTC v. QT, Inc.*, 512 F.3d 858 (7th Cir. 2008) ........................................................................ 12

*Gibson v. Off. of Pers. Mgmt.*, 825 F. App'x 890 (Fed. Cir. 2020)........................................... 29

*Golden State Bottling Co. v. Nat'l Labor Rel. Board*, 414 U.S. 168 (1973) ............................. 35

*Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63 (1st Cir. 2002)...................................... 34

*Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Comm'r*, 926 F.3d 819
   (D.C. Cir. 2019).................................................................................................................... 26

*Gutrejman v. United States*, 596 F. Supp. 3d 1 (D.D.C. 2022).........................................6, 11, 20

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. 11-2247,
   2014 WL 6892141 (C.D. Cal. Nov. 5, 2014)...................................................................... 22

*Implant Direct Sybon Int'l v. Zest IP Holdings, Inc.*, No. 11-247, 2012 WL 1969292
   (S.D. Cal. June 1, 2012) ...................................................................................................... 21

*In re Daniel Chapter One,* No. 9329, 2009 WL 2584873 (FTC Aug. 5, 2009)) ....................... 22

*In re R.M.J.*, 455 U.S. 191 (1982)...................................................................................... 15, 16

*Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76 (D.C. Cir. 1963)... 32

*Kiddie Rides USA, Inc. v. Curran*, No. 85-1368, 1986 WL 13452 (D.D.C. June 23, 1986).......... 9

*Kimberly-Clark Corp. v. Dist. of Columbia*, 286 F. Supp. 3d 128 (D.D.C. 2017)..................... 16

*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992)............................................................... 11, 16

*Maniolos v. United States*, 741 F. Supp. 2d 555 (S.D.N.Y. 2010) ............................................ 30

*Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) ................................................................. 16

*Peel v. Att'y Regis. & Discip. Comm'n of Illinois*, 496 U.S. 91 (1990)...................................... 16

*POM Wonderful, LLC v. FTC*, 777 F.3d 478 (D.C. Cir. 2015)........................................... Passim

*Repub. Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ............................................ 6

*Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945)............................................................ 31, 32

*Removatron Int'l Corp. v. FTC*, 884 F.2d 1489 (1st Cir. 1989).............................................. 13

*S.E.C. v. Bilzerian*, 613 F. Supp. 66 (D.D.C.), *aff'd*, 410 F. App'x 346
  (D.C. Cir. 2010).......................................................................................................32, 33, 35

*Salvador v. Allstate Prop. & Cas. Ins. Co.*, No. 19-2754, 2020 WL 7042843
  (D.D.C. Nov. 30, 2020)................................................................................................21

*Smith v. Hartz Mountain Corp.*, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012)........................ 21

*Smith v. United States*, 21 F. Supp. 3d 112 (D.D.C. 2015), *aff'd*, 843 F.3d 509
  (D.C. Cir. 2016).........................................................................................................22

*Steele v. Goodman*, 382 F. Supp.3d. 403 (E.D. Va. 2019)................................................6, 14, 23

*Thompson Medical Co.*, 104 F.T.C. 648 (1984), *aff'd*, 791 F.2d 189
  (D.C. Cir. 1986).......................................................................................... 11, 12, 13, 14, 15

*Travelers Indem. Co. v. Mitchell*, 925 F.3d 236 (5th Cir. 2019)............................................... 27

*United States v. Armour & Co.*, 402 U.S. 673 (1971)............................................................... 31

*United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129 (D.D.C. 2016).....6, 11, 21

*United States v. Daniel Chapter One*, 89 F. Supp. 3d 132 (D.D.C. 2015),
  *aff'd*, 650 F. App'x 20 (D.C. Cir. 2016)......................................................................... 26

*United States v. Daniel Chapter One*, 896 F. Supp. 2d (D.D.C. 2012)...........................19, 23, 31

*United States v. H.M. Prince Textiles, Inc.*, 262 F. Supp. 383 (S.D.N.Y. 1966).............23, 30, 31

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009).....................31, 32, 35

*United States v. Reader's Digest Ass'n.*, 662 F.2d 955 (3rd Cir. 1981).............................. 19, 20

*United States v. Vitasafe Corp.*, 212 F.Supp. 397 (S.D.N.Y.1962)........................................... 30

*USAA Cas. Ins. Co. v. Calderon*, 818 F. App'x 828 (10th Cir. 2020)...................................... 27

*Ward v. D.C. Dept. of Youth Rehab. Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011).........................9

*Washington Exec. Servs., Inc. v. Hartford Cas. Ins. Co.*, 567 F. Supp. 3d 1 (D.D.C. 2021).........7

*Washington Legal Found. v. Friedman*, 13 F. Supp.2d 51 (D.D.C. 1998)................................17

*Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
    776 F.3d 1 (D.C. Cir. 2015)..........................................................................31, 32, 34

*Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
    985 F. Supp. 2d 23 (D.D.C. 2013) ...............................................................32, 33

*Whitaker v. Thompson*, 248 F. Supp. 2d 1 (D.D.C. 2002).......................................................16

*Zauderer v. Office of Discip. Counsel of Sup. Court of Ohio*, 471 U.S. 626 (1985).............15, 16

## Federal Statutes

15 U.S.C. § 45(a).........................................................................................................3, 4

15 U.S.C. § 45(*l*) ........................................................................................................4, 26

15 U.S.C. § 52 ..................................................................................................................5

28 U.S.C. § 2462 ............................................................................................................29

## Federal Rules

Fed. R. Civ. P. 8(a)(2)...................................................................................................6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ Passim

Fed. R. Civ. P. 12(d)............................................................................................. Passim

Fed. R. Civ. P. 65(d)(2), 65(d)(2)(C)........................................................................31, 33

Fed. R. Evid. 408...................................................................................................7, 9, 18

## Other Authorities

5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1356
    (3d ed. Apr. 2022 Update) ......................................................................................6

60 Fed. Reg. 42,569......................................................................................................28

## INTRODUCTION

The Memorandum of Law in Support of Renewed Motion to Dismiss Complaint (Dkt. 15-1) offers unsupported assertions, irrelevant facts and arguments, materials that cannot properly be considered at this stage of the proceedings, and information proffered in violation of the Federal Rules of Evidence.  It also repeatedly and erroneously represents that the parties agree or that issues are undisputed when that is not the case.[1]  As a result, the motion is little more than a smokescreen designed to distract this Court from the well-pled allegations of the FTC's Complaint for Permanent Injunction, Civil Penalties, and Other Relief (Complaint) (Dkt. 1).  For the reasons explained more fully below, the FTC respectfully requests that the Court deny the Renewed Motion to Dismiss Complaint (Dkt. 15).

## BACKGROUND[2]

Since at least 2011, Defendant Gravity Defyer Medical Technology Corporation (Gravity Defyer) and its founder, chairman, president, and sole owner, Defendant Alexander Elnekaveh, have been selling footwear to consumers throughout the United States.  Compl., Dkt. 1 at 2, 3, 7, ¶¶ 2, 6, 7, 18.  Gravity Defyer's customers are primarily people aged 55 and older.  *Id.* at 7, ¶ 18. Defendants sell their shoes via www.gravitydefyer.com, an in-house call center, company-owned stores, and retailers across the country.  *Id.* at 7, ¶ 19.  They advertise their footwear on the Internet and in numerous national magazines, including everything from *The New Yorker* and *Time* to *TV Guide* and *The National Enquirer*.  *Id.* at 8, ¶ 22.  At various times, Defendants have offered over 100 different styles of shoes at prices ranging up to $235. In recent years, Gravity

---

[1] *E.g.*, Dkt. 15-1 at 18 n.13, 19, 24, 25, and 28.

[2] Facts described herein are alleged in the Complaint and must be taken as true for purposes of this motion.  *See* Argument Section I.A.

Defyer's approximate annual footwear sales, excluding refunds, were as high as $13.1 million. *Id.* at 7-8, ¶¶ 19-21.

Defendant Alexander Elnekaveh invented the VersoShock sole contained in Gravity Defyer footwear and, since approximately 2016, Defendants have advertised that Gravity Defyer footwear contains soles with VersoShock technology that relieve pain. Compl., Dkt. 1 at 3, 7, ¶¶ 7, 18. Their ads contain pictures of medical professionals, people running, and colorful graphics representing that Gravity Defyer footwear is clinically proven to reduce or relieve pain, including 85% less knee pain, 91% less back pain, 92% less ankle pain, and 75% less foot pain. *Id.* at 8-15, ¶ 25. They further represent that Gravity Defyer footwear will relieve pain in people suffering from plantar fasciitis, arthritis, joint pain, heel spurs, and other medical conditions. *Id.* Their ads also include testimonials and statements like "LIVE LIFE WITHOUT PAIN," "CLINICALLY PROVEN TO RELIEVE PAIN," and "LIVE LIFE PAIN FREE." *Id.* at 8-16, ¶¶ 25, 26.

Defendants buttress their clinically proven pain relief claims by citing to a purported "double-blind study conducted by Olive View UCLA Medical Center." *Id.*, Dkt. 1 at 8-15, ¶ 25.[3] Defendant Elnekaveh conceived of this study, decided to fund it, and participated in developing a protocol for it. *Id.* at 3, ¶ 7. The study, however, has numerous and substantial flaws, rendering it unreliable. Among other things, it was of insufficient size and duration, failed to ensure adequate double-blinding, failed to adequately control for other treatments that participants might have received (such as medications or physical therapy), and relied solely on

---

[3] Although Defendants refer to this study as "the UCLA Study," Dkt. 15-1 at 12, the study was in fact commissioned by Gravity Defyer, *see id.* at 10, and conducted at Olive View-UCLA Medical Center, a hospital system which is a separate organization from the University of California at Los Angeles (UCLA). It would be more accurate to call it the "Gravity Defyer study" or the "Olive View study."

participants' self-reported pain levels instead of including range of motion or other functional tests. In addition, the study failed to take into account data from approximately twice as many participants who wore Gravity Defyer shoes with and without the VersoShock sole and included results from participants who stopped wearing the shoes. It was also only designed to measure knee pain. It therefore was not sufficient to determine the effects of wearing Gravity Defyer footwear on knee, back, ankle, or foot pain, or pain associated with the specific conditions listed in Defendants' ads. *Id.* at 16, ¶ 27.

Defendant Elnekaveh has overseen the daily operations of Gravity Defyer's business, including its product development, business strategy, and advertising and marketing materials. *Id.* at 3, ¶ 7. He is also an FTC recidivist. In 2001, the FTC issued an administrative complaint against Esrim Ve Sheva Holding Corporation, sometimes doing business as Gadget Universe, and Mr. Elnekaveh, individually and as an officer of the corporation. According to the complaint, Mr. Elnekaveh and his company sold a fuel-line magnet device that they claimed would reduce fuel consumption and harmful emissions, including by up to specific percentages listed in the ads, and that tests performed at a certified EPA laboratory had proved these results. The FTC alleged, however, that the tests did not prove those results, and therefore the ads were false or misleading. *Id.*, Dkt. 1 at 4-5, ¶¶ 9-11; Dkt. 1-1 at 1-3, ¶¶ 1, 2, 5-9. The complaint also alleged that certain ads included Mr. Elnekaveh's testimonial, which was false or misleading in that it did not reflect Mr. Elnekaveh's actual findings and experience with the product. *Id.*, Dkt. 1 at 5, ¶ 12; Dkt. 1-1 at 4, ¶¶ 10-11. The complaint charged Mr. Elnekaveh and his company with engaging in unfair or deceptive advertising practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id.*, Dkt. 1 at 4, ¶ 9; Dkt. 1-1 at 4, ¶ 12.

Defendant Elnekaveh and Gadget Universe settled the administrative complaint with an order, Exhibit A to the Complaint, that became final in December 2001 (Commission Order). *Id.*, Dkt.1 at 5, ¶ 13; Dkt. 1-1 at 4-8.  Part III of the Commission Order prohibited Mr. Elnekaveh and those with notice of the Commission Order who acted in active concert or participation with him from claiming that the experience described in a user testimonial represented the typical or ordinary experience of people who use the product, unless the representation was true and Mr. Elnekaveh possessed and relied upon competent and reliable scientific evidence that substantiated the claim or there was a disclosure that complies with Part III of the Commission Order.  *Id.*, Dkt. 1 at 5, 17, ¶¶ 14, 29; Dkt. 1-1 at 6.  Part IV of the Commission Order prohibited Mr. Elnekaveh and those with notice of the Commission Order who acted in active concert or participation with him from misrepresenting "the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research."  *Id.*, Dkt. 1 at 6, 18, ¶¶ 15, 33: Dkt. 1-1 at 6.  Defendant Elnekaveh signed an Agreement Containing Consent Order, which included the Commission Order.  Compl., Dkt. 1 at 6, ¶ 16.  Because Defendant Elnekaveh has been an officer and the sole owner of Defendant Gravity Defyer, his knowledge of the Commission Order is imputed to Gravity Defyer.  *Id.* at 7, ¶ 17.

The instant Complaint asserts four counts against Defendants: Counts I and II state claims for violations of the Commission Order under Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*), and Counts III and IV state claims for deceptive advertising under Sections 5(a) and 12 of the FTC Act, 15 U.S.C. § 45(a), 52.  Count I alleges that Defendants' ads included user testimonials claiming that their footwear alleviates pain, and that those representations violated Part III of the Commission Order because they were not substantiated by competent and reliable scientific evidence, nor did they contain a disclosure described in the Commission Order.  *Id.* at

4

17-18, ¶¶ 29-32.  Similarly, Count II alleges that Defendants, citing a study, represented that their footwear was clinically proven to relieve pain, but because the study did not demonstrate that their footwear was clinically proven to relieve pain, Defendants violated Part IV of the Commission Order.  *Id.* at 18, ¶¶ 33-36.

Counts III and IV mirror, to some degree, Counts I and II, respectively.  Count III alleges that representations in Defendants' ads, including representations that their footwear alleviates pain, were false, misleading, or unsubstantiated at the time they were made.  *Id.* at 19, ¶¶ 40-42.  Count IV alleges that Defendants' representations that their footwear is clinically proven to reduce pain are false.  *Id.* at 20, ¶¶ 43-45.  With respect to both counts, Defendants' footwear is alleged to be a device within the meaning of Section 12 of the FTC Act, 15 U.S.C. § 52.  *Id.* at 18-19, ¶ 39.

## **ARGUMENT**

### I.    **Legal Standard for Rule 12(b)(6) Motions and Matters the Court May Consider**

#### A.    **Legal Standard for Rule 12(b)(6) Motions**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Courts "should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff

5

the benefit of all inferences that can be drawn therefrom." *United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129, 138 (D.D.C. 2016); *Banneker Ventures*, 798 F.3d at 1129.

A complaint need not contain a detailed recitation of facts, but only "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  As this Court has noted, "[i]n evaluating a Rule 12(b)(6) motion, [courts] 'must first take not[e] of the elements a plaintiff must plead to state [a] claim to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Gutrejman v. United States*, 596 F. Supp. 3d 1, 6 (D.D.C. 2022) (citations omitted).  In addition, a Rule 12(b)(6) motion is "not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1356 (3d ed. Apr. 2022 Update); *see Steele v. Goodman*, 382 F. Supp.3d. 403, 417 (E.D. Va. 2019) (quoting *Repub. Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

## B.     <u>Matters the Court May Consider</u>

In determining whether a complaint fails to state a claim, the court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Under Federal Rule of Civil Procedure 12(d), if a moving party introduces "matters outside the pleadings" in support of a Rule 12(b)(6) motion to dismiss, as the Defendants have done here, the court must either ignore that evidence or convert the motion into one for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a

motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . .").[4]

Defendants have introduced multiple extraneous matters, including but not limited to lengthy, speculative, and accusatory arguments about the FTC's motivation in bringing this case (*see, e.g.*, Dkt. 15-1 at 9, 10-11, 13-14), matters relating to the Commission Order (*id.* at 9-10, 13-17), and a settlement communication squarely inadmissible under Federal Rule of Evidence 408 (*id.* at 2, 18-19 and Exhibit D, Dkt. 15-5), as well as another exhibit that was not cited or referenced in the Complaint (Exhibit B, Dkt. 15-3).  Because summary judgment is premature at this stage of the proceedings,[5] this Court must exclude those matters pursuant to Rule 12(d).

1.      **Selected Portions of Defendants' Memorandum**
         **(Dkt. 15-1) Must Be Excluded**

First, the Court must exclude Defendants' statements about the FTC's alleged motivation in investigating and initiating litigation against Defendants' deceptive advertising and violations of the Commission Order.  Dkt. 15-1 at 9-11 and 13-14.  These statements, which the FTC disputes, include the baseless assertion that the agency's investigation and lawsuit are a front to

---

[4] The cases cited by Defendants, Dkt. 15-1 at 20, do not indicate otherwise. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007), stated that "public records subject to judicial notice" could be considered on a motion to dismiss, but Exhibits B and D, Dkt. 15-3 and 15-5, are the antithesis of public records, for they concern the FTC's nonpublic investigation into Defendants' practices.  These documents respectively state that they are "part of a nonpublic investigation" and a "confidential settlement communication" related to that investigation.  Dkt. 15-3 at 2; Dkt. 15-5 at 1.  *Washington Exec. Servs., Inc. v. Hartford Cas. Ins. Co.*, 567 F. Supp. 3d 1 (D.D.C. 2021), is also distinguishable, as it was a coverage dispute and merely allowed the defendant to introduce the insurance policy at issue, which was referenced in the complaint, as well as District of Columbia COVID-related orders concerning business operations.  *Id.* at 3-4.  Dkt. 15-3 and 15-5 are not public regulations, nor are they referred to in the Complaint.

[5] As explained in Section III.A below, deceptive advertising cases typically are decided after the introduction of expert testimony, and the FTC intends to introduce such testimony.  It also intends to conduct discovery concerning any expert opinions that Defendants seek to introduce.

expand its civil penalty authority after *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021).

Besides being false, this assertion is also nonsensical because, as Defendants point out, the

FTC's investigation into Defendants' practices began years before the Supreme Court's decision

in *AMG*.

Second, the Court must exclude Defendants' statements regarding the Commission Order

that underlies Counts I and II of the Complaint.  The offending statements include Defendant

Elnekaveh's alleged motivation in agreeing to the Commission Order, his purported cooperation

with the FTC, and the FTC's supposed opinion of him at that time.  Dkt. 15-1 at 9-10 and 14-17.

Not only are these statements irrelevant to whether the FTC's Complaint states a claim for relief,

the Court must disregard them, as they are neither attached to nor incorporated in the FTC's

Complaint, nor are they matters about which this Court can take judicial notice.

## 2.    The Court Must Exclude Exhibits B and D [6]

The Court must exclude Exhibit B, Dkt. 15-3, the CID that was issued to Defendant

Gravity Defyer, and Defendants' statements referencing that exhibit.  Dkt. 15-1 at 12.  This

document was neither attached to nor referenced in the Complaint, is not a public record, and

therefore must be excluded pursuant to Rule 12(d). [7]  The FTC's CID—a demand for information

---

[6] The FTC does not request that the Court exclude Exhibit C, Dkt. 15-4, nor does it specifically request that the Court exclude Exhibit A, Dkt. 15-2.  The Court may, however, exclude the latter exhibit because it is not the version of the study that Gravity Defyer relied on when it disseminated the advertising reproduced in the Complaint, and thus is not incorporated in the Complaint.  *See* Compl., Dkt. 1 at 8-15, ¶ 25A, B, D, F, and J (excerpts of ads that were disseminated from 2017 to 2020); *compare* Dkt. 15-2 (indicating that the article was published in a "January/February 2022" journal issue).  While the percentages of pain relief as reported in the ads and in Dkt. 15-2 may be the same, the write-up of that data differs, and it is the write-up that Defendants have filed as Dkt. 15-2.

[7] The cases cited by Defendants at Dkt. 15-1 at 12-13 n.4 do not support introducing Exhibit B, Dkt. 15-3, into the record for purposes of this Rule 12(b)(6) motion because each of those courts needed to ascertain the extent of prior administrative proceedings regarding the merits of the

and documents issued pursuant to the FTC Act—is irrelevant to whether the FTC's Complaint states a claim for relief.

Finally, the Court must exclude under Rule 12(d) Exhibit D, Dkt. 15-5, which is a confidential settlement communication from the FTC to Defendants, as well as Defendants' statements regarding that exhibit. Dkt. 15-1 at 18-19 and n.13. This document, which was neither in the Complaint nor referenced by the pleadings, conspicuously bears the heading "CONFIDENTIAL SETTLEMENT COMMUNICATION." Nonetheless, Defendants seek to use Exhibit D to introduce and mischaracterize statements made by the FTC during settlement negotiations in an attempt to undermine the FTC's Complaint allegations. *See, e.g.,* Dkt. 15-1 at 10 (claiming that the FTC indicated that Defendants' "advertising claims could remain exactly the same"); *id.* at 18 (stating that the FTC would allow Defendants to make "a number of the strongest claims that [they] had ever made in the past"); *id.* at 30 (asserting that the letter "casts further doubt on the plausibility of the FTC's allegations"); *id.* at 31 (arguing that the letter "undercuts the FTC's bare and speculative assertions"). This is a textbook example of a violation of Federal Rule of Evidence 408. *See* Fed. R. Evid. 408 (rendering offers and statements made during compromise negotiations inadmissible to prove the validity of a disputed claim); *Kiddie Rides USA, Inc. v. Curran*, No. 85-1368, 1986 WL 13452, at *4 n.2 (D.D.C. June 23, 1986) (statements in brief regarding an offer to settle "constitutes a clear violation of FRE 408"). Accordingly, Exhibit B, Exhibit D, statements concerning them, and the other statements

---

plaintiff's claim. *See Ward v. D.C. Dept. of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 121 (D.D.C. 2011); *Andueza Croce v. Garland*, No. 21-00264, 2021 WL 5206106, at *2 (D.D.C. Nov. 9, 2021). Here, of course, there was no administrative proceeding regarding the merits of a claim; there was only the FTC's nonpublic investigation, which is now concluded.

in Dkt. 15-1 referenced above must be excluded from the Court's consideration of this Rule

12(b)(6) motion pursuant to Rule 12(d).[8]

## II.      Counts I-IV State Claims Upon Which Relief Can Be Granted

Generally speaking, because Counts III and IV of the Complaint allege deceptive

advertising claims under Sections 5(a) and 12 of the FTC Act, and Counts I and II allege that

such deceptive advertising is a violation of the Commission Order, [9] the FTC begins by

discussing the requisites for deceptive advertising claims as stated in Counts III and IV of the

Complaint (subsection II.A below) and then responding to Defendants' First Amendment

argument (subsection II.B below).  In subsection II.C below, the FTC demonstrates that Counts I

and II state claims under Section 5(*l*) and then, in subsections II.C.1 and II.C.2, the FTC

responds, respectively, to Defendants' arguments contesting the allegations supporting Count I

and their argument that their advertising claims "report exactly the results of the study" (which is

addressed to Counts II-IV).

### A.      Counts III and IV State Claims Under Sections 5(a) and 12 of the FTC Act

Defendants contend, incorrectly, that Counts II-IV [10] of the Complaint should be

dismissed because (1) their advertising clams have not been alleged to be "actually or

---

[8] Defendants' assertions about Exhibit D, Dkt. 15-5, are also patently false.  What Defendants characterize as their "strongest [advertising] claims" are not even quoted in the Complaint.  And, contrary to their representation that "there is no dispute [between the parties] regarding future claims," the FTC seeks "a permanent injunction to prevent future violations of the FTC Act." *See* Dkt. 15-1 at 18 & n.13; *compare* Dkt. 1 at 8-16, ¶¶ 23-26, and at 21.

[9] We say "generally speaking" because the facts underlying Count III are broader than the facts underlying Count I, which is limited to misleading testimonials.  *Compare* Compl., Dkt. 1 at 19, ¶¶ 40-42 *with id.* at 17-18, ¶¶ 29-32.

[10] This subsection also addresses Defendants' arguments against Count II that are the same as the arguments against Counts III and IV.

inherently" misleading, and (2) their advertising claims "report exactly the results of the ... study." Dkt. 15-1 at 24-32. In addition to making these erroneous arguments, which are addressed, respectively, in subsections II.B and II.C. 2 below, Defendants fail to measure the Complaint allegations against the requisites for claims under Sections 5(a) and 12, which in this case is the proper standard for deciding a motion to dismiss for failure to state a claim upon which relief can be granted. *See Gutrejman*, 596 F. Supp. 3d at 6.

An advertisement violates Sections 5 and 12 of the FTC Act when it (1) contains a representation or omission that (2) is likely to mislead consumers acting reasonably under the circumstances and (3) the representation or omission is material. *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994); *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992). [11] An advertiser making objective claims about a product's performance represents "explicitly or by implication that the advertiser has a reasonable basis supporting these claims." FTC Policy Statement Regarding Advertising Substantiation, appended to *Thompson Medical Co.*, 104 F.T.C. 648, 839 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986). An ad is deceptive "if the advertiser lacks a 'reasonable basis' to support the claims made in it." *Thompson Med. Co. v. FTC*, 791 F.2d 189, 193 (D.C. Cir. 1986). Advertisers lacking "adequate substantiation evidence" for their claims "necessarily lack any

---

[11] Materiality is presumed for claims such as the ones at issue here for three independent reasons: they are express, Defendants intended to make them, and they are medical, health-related claims. *See FTC v. COORGA Nutraceuticals Corp.*, 201 F. Supp. 3d 1300, 1308 (D. Wyo. 2016). The Court can also infer materiality from the strong, unqualified health-related claims made in Gravity Defyer's ads and the serious defects in the study that the Complaint identifies. Compl., Dkt. 1, at 8-16, ¶¶ 23-27; *see United States ex rel. Keaveney*, 219 F. Supp. 3d at 138 (courts deciding Rule 12(b)(6) motions should give plaintiffs the benefit of all inferences that can be drawn from factual allegations).

reasonable basis" for those claims, making those ads "deceptive as a matter of law." *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010).

For substantiation purposes, advertising claims are generally either *efficacy claims*, which represent that a product provides the advertised benefit but include no suggestion of scientific proof for the product's effectiveness (for example, a claim that Gravity Defyer footwear will relieve pain), or *establishment claims* (also called proof claims), which represent that an advertiser has scientific evidence, such as a study, supporting its advertising claims. *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015); *Thompson Med. Co.*, 791 F.2d at 194. The substantiation required for efficacy claims is determined by evaluating five factors, including "'the amount of substantiation experts in the field would consider reasonable.'" *POM Wonderful*, 777 F.3d at 490-91 (listing the factors enumerated in *Pfizer, Inc.*, 81 F.T.C. 23 (1972)). For establishment claims, the *Pfizer* factors are typically not applied; rather advertisers must have substantiation "sufficient to satisfy the relevant scientific community of the claim's truth." *Id.* at 490-91. Moreover, if an establishment claim "states a specific type of substantiation"—for example, Gravity Defyer's claim that a "clinical double-blind study" proved the advertised benefits—the "advertiser must possess the specific substantiation claimed." *Id.* at 491. This latter type of establishment claim is referred to as a specific establishment claim.

Whether an advertiser has adequate substantiation for its claims is often a question of fact. *See POM Wonderful*, 777 F.3d at 491-92 (upholding the Commission's factual findings that POM Wonderful's efficacy and establishment claims were unsupported by substantial evidence); *FTC v. QT, Inc.*, 512 F.3d 858, 860 (7th Cir. 2008) (affirming the district court's findings indicating that "almost everything that defendants have said about [their product] is false").

Because of the nature of the inquiry, courts typically hear expert testimony regarding the level of substantiation the scientific community would require for the advertising claims at issue and whether the advertiser possessed it. *See, e.g., POM Wonderful*, 777 F.3d at 495 (upholding the Commission's determination about the required level of substantiation for the claims at issue based on expert reports and testimony); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1498 (1st Cir. 1989) (court relied on expert testimony to determine that a well-controlled scientific study was required to support defendants' advertising claims).

Health-related claims like the ones at issue here require a high degree of substantiation: competent and reliable scientific evidence, typically consisting of a randomized, placebo-controlled, human clinical trial. *See POM Wonderful*, 777 F.3d at 500-01, 505 (enforcing Commission order to the extent that it required competent and reliable scientific evidence consisting of one randomized and controlled human clinical trial); *Thompson Med. Co.*, 791 F.2d at 194-96 (affirming Commission order requiring competent and reliable scientific evidence as substantiation); *Bristol-Myers Co. v. FTC*, 738 F.2d 554, 560 (2nd Cir. 1984) (enforcing Commission order requiring "competent and reliable scientific evidence").

The Complaint alleges that Gravity Defyer made both efficacy and establishment health-related claims, *see* Compl., Dkt. 1 at 8-20, ¶¶ 25, 26, 30, 34, 40, and 43, as well as specific establishment claims. *Id.* at 8, 12, 15, ¶¶ 25A, B, D, F, and J, and ¶ 34. It clearly and specifically alleges examples of the challenged advertising claims, *id.* at 2, 7-16, 19-20, ¶¶ 2, 18, 23-26, 40, 43, and provides details about where and approximately when those ads were disseminated. *Id.* at 8, 17-18, ¶¶ 22, 25, 30, 34. Defendants concede that these claims were made. Dkt. 15-1 at 24 ("Gravity Defyer's advertising claims report … the results of the … study" and, in addition, "Gravity Defyer makes pain reduction claims, generally …."). They

thus have adequate notice of the FTC's claims against them.

The Complaint further alleges, as a factual matter, that Defendants "lacked competent and reliable scientific evidence to substantiate" the claims in Gravity Defyer's ads, which is the standard that advertisers must meet to make health-related claims.  Compl., Dkt. 1 at 16, 19-20, ¶¶ 27, 41, 43-44; *see POM Wonderful, supra; Thompson Med. Co., supra; Bristol-Myers, supra.* With respect to those claims and Defendants' specific establishment claims, the Complaint further provides a non-exclusive list of *seven reasons* why the study Gravity Defyer commissioned and relies upon as support for its advertising claims would not satisfy the relevant scientific community of the claims' truth.  Compl., Dkt. 1 at 16, ¶ 27; *see POM, supra.*  And while Defendants take issue with those reasons, *see* Dkt. 15-1 at 29-32, this is not the juncture at which they should be weighed.  *See Steele v. Goodman*, 382 F. Supp.3d. at 417.  The reasons include, but are not limited to, allegations that the study:

- "was only designed to measure knee pain," which clearly calls into question claims that Gravity Defyer footwear relieves back, ankle, and foot pain;

- "included participants who stopped wearing the shoes," which obviously calls into question the results obtained;

- "relied solely on participants' self-reported pain levels," when it could have included range of motion or other functional tests of pain; and

- "failed to control for other treatments that participants might have received (such as medications or physical therapy)," which could have affected participants' pain levels.

*See* Compl., Dkt. 1 at 16, ¶ 27.  These reasons plainly are factual and specific, and thus raise reasonable questions about the quality and results of Gravity Defyer's study.  They are more than

14

adequate to enable this Court to infer that Defendants lacked a reasonable basis for the claims made in Gravity Defyer's advertising, and therefore are liable for deceptive advertising under Sections 5(a) and 12 of the FTC Act.  *See Iqbal,* 556 U.S. at 678*; Thompson Med. Co.,* 791 F.2d at 193.

### B.     Defendants' First Amendment Arguments Do Not Provide a Basis for Dismissing Complaint Counts II-IV

Over thirty-five years ago, the United States Supreme Court deemed it "well-settled" that "[t]he States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer v. Office of Discip. Counsel of Sup. Court of Ohio*, 471 U.S. 626, 638 (1985).  Similarly, the United States Court of Appeals for the District of Columbia Circuit has confirmed that "[t]he FTC Act proscribes—and the First Amendment does not protect—deceptive and misleading advertisements." *POM Wonderful, LLC v. FTC*, 777 F.3d at 484.  The *POM Wonderful* court explained:

> 'For commercial speech to come within the First Amendment, it must at least concern lawful activity and not be misleading.' *Cent. Hudson Gas & Elec. Corp. v. Publ. Serv. Comm'n*, 447 U.S. 557, 556 (1980).  Consequently, 'misleading advertising may be prohibited entirely.' *In re R.M.J.*, 455 U.S. 191, 203 (1982).

777 F.3d at 499 (cleaned up)*; see FTC v. Pharmtech Rsch., Inc.*, 576 F. Supp. 294, 303 (D.D.C. 1983) ("[T]he First Amendment does not prohibit government regulation of false or misleading advertising.")

As demonstrated in Argument Section II.A. above, the Complaint alleges that Defendants' advertising is false, misleading, or unsubstantiated, and therefore deceptive.  *See also,* Compl., Dkt. 1 at 16, 19-20, ¶¶ 27, 41-42, 44-45.  If the FTC proves those allegations, no First Amendment protection is accorded to that speech.  Thus, in *POM Wonderful*, when the United States Court of Appeals for the D.C. Circuit rejected the petitioners' First Amendment

15

challenge to the FTC's finding of liability, it reasoned that "insofar as the FTC imposed liability on petitioners for the nineteen ads found to be deceptive . . . the Commission sanctioned petitioners for misleading speech unprotected by the First Amendment." *POM Wonderful*, 777 F.3d at 500.

Defendants attempt to sidestep this well-established case law by citing to irrelevant lawyer advertising and other decisions in which the government, acting as a regulator, seeks to block categories of speech. Dkt. 15-1 at 25-28. However, the issue in this case is not, as Defendants claim, whether the FTC can "ban" commercial speech referencing their study; it is whether Defendants' advertising is deceptive. The decisions they cite are inapplicable to individualized cases, like this one, that concern a single advertiser's allegedly false and misleading advertising. *See Kraft, Inc.,* 970 F.2d at 317, 325. According to the United States Court of Appeals for the Seventh Circuit:

> The restriction challenged in *Peel* [*v. Att'y Regis. & Discip. Comm'n*, 496 U.S. 91 (1990)] is a completely different animal than the one challenged here. In *Peel*, the issue was whether a prophylactic regulation applicable to all lawyers, completely prohibiting an entire category of potentially misleading commercial speech, passed constitutional muster. *Peel*, 496 U.S. at 108-09. . . . Here, by contrast, the issue is whether an individualized FTC cease and desist order, prohibiting a particular set of deceptive ads, passes constitutional muster.

*Kraft*, 970 F.2d at 317 (cleaned up); *see id.* at 325. [12]

---

[12] The same distinction applies to the other cases cited by Defendants. *Zauderer*, *In re R.M.J.*, and *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977), are all lawyer advertising cases, and the remaining cases likewise involved prophylactic regulations affecting categories of speech. *See Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n,* 447 U.S. 557, 558 (1980) (question concerned a regulation completely banning promotional advertising by an electrical utility); *Pearson v. Shalala,* 164 F.3d 650, 651, 661 (D.C. Cir. 1999) (invalidating sub-regulations requiring dietary supplement makers to submit health claims to the FDA for preapproval); *Kimberly-Clark Corp. v. Dist. of Columbia,* 286 F. Supp. 3d 128, 133 (D.D.C. 2017) (issue was whether a District of Columbia law regulating speech used to advertise flushable wipes was constitutional); *Whitaker*

Even if the cases cited in footnote 12, *supra*, could be applied to this case, they would be distinguishable for at least two reasons. First, none of those cases arose in the context of a Rule 12(b)(6) motion to dismiss a government enforcement action. *See also, FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 39, 45 (D.C. Cir. 1985) (remanding with instructions to modify a permanent injunction). They are therefore inapplicable to cases such as this one, where the legal sufficiency of the FTC's Complaint is the question currently facing the Court. Second, when advertising claims are alleged to be unsubstantiated under the FTC Act, as they are here, they are alleged to be actually or inherently—not potentially—misleading for purposes of a First Amendment analysis. *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 213 (D. Mass. 2009), *aff'd*, 624 F.3d 1 (1st Cir. 2010) (entering judgment in favor of the FTC and holding that "[i]t is well-accepted that unsubstantiated claims are deemed actually, as opposed to potentially, misleading."). [13]

Defendants' contentions that the FTC's claims are insufficiently pled, *see* Dkt. 15-1 at 28-32, dispute the Complaint allegations and thus exceed the bounds of a Rule 12(b)(6) motion. Although the Defendants brand these allegations as "speculative," they state facts that would, if found to be true, establish that Defendants' ads are misleading and thus violate the FTC Act. For

---

*v. Thompson*, 248 F. Supp. 2d 1, 2 (D.D.C. 2002) (challenging FDA decision prohibiting dietary supplements' labels from including claims about a connection between antioxidant vitamins and cancer); *Washington Legal Found. v. Friedman,* 13 F. Supp.2d 51, 54 (D.D.C. 1998) (question concerned FDA and HHS policies restricting certain forms of manufacturer promotion of off-label uses for FDA-approved drugs and devices), *appeal dismissed and judgment vacated sub nom, Washington Legal Found. v. Henney,* 202 F.3d 331 (D.C. Cir. 2000).

[13] Defendants likewise err in suggesting that the test described in *Cent. Hudson* governs this case. *See* Dkt. 15-1 at 27 n.14. The first question under that test is whether the speech at issue is misleading, and, if so, the rest of the test is not applied. 447 U.S. at 566 (using the word "next" after the first element of the test)*; FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1185 (N.D. Ga. 2008) (the last three elements of the *Central Hudson* analysis only apply to protected speech and should not be used to determine if speech is protected).

example, where the Complaint alleges that Defendants' study "failed to ensure adequate double-blinding," it challenges the study's reliability, along with Defendants' claim that it was in fact a "double-blind study." Dkt. 1 at 16, ¶ 27; *compare id.* at ¶ 23.A, B, D, F, and J. The allegation that the study "failed to take into account data from approximately twice as many participants who wore Gravity Defyer shoes with and without the VersoShock sole," would, if true, lead to a finding that the "results" touted in the ads ignore substantial, relevant data tending to show a different result. *See POM Wonderful,* 777 F. 3d at 494 (noting with approval the Commission's finding of omissions of material fact based on the "selective touting of ostensibly favorable study results and nondisclosure of contrary indications from the same or a later study"). And the allegations that the study "failed to "adequately control for other treatments that participants might have received, such as medications or physical therapy" and "included results from participants who stopped wearing the shoes" tend to demonstrate that Defendants' claimed substantiation fails to account for other ways in which participants' pain could have been alleviated. Even Defendants' argument that their study has been published is an insufficient basis on which to dismiss the Complaint, for the D.C. Circuit has found advertising claims to be misleading notwithstanding the existence of published studies concerning the product at issue. *See POM Wonderful*, 777 F.3d at 484-86, 488 (no basis for setting aside Commission's conclusion that ads made false or misleading clams; opinion notes that the Aviram, Davidson, and Padma-Nathan studies relied upon by the advertiser were published).

A final reason why Defendants' First Amendment argument fails is because it is largely based on Dkt. 15-5, which should be excluded under Federal Rule of Civil Procedure 12(d) and Federal Rule of Evidence 408. *See* Dkt. 15-1 at 25, 30-31; Argument Section I.B.2 above. In addition to being improperly introduced into the record in this case, Dkt. 15-5—which reflects a

pre-complaint settlement offer that Defendants rejected—is of no legal consequence.  *See FTC v. Carter*, 464 F. Supp. 633, 642 (D.D.C. 1979) (commercial speech not unconstitutionally chilled at pre-complaint stage).  Moreover, as this Court has previously indicated, matters "relating to the FTC's now completed investigation" are moot.  *Gravity Defyer Med. Tech. Corp. v. FTC*, Case No. 1:22-cv-1157-RDM, Dkt. 26 at 7-8.  For all these reasons, Dkt. 15-5 cannot properly support a Rule 12(b)(6) challenge to the FTC's Complaint.  Defendants' First Amendment and other arguments should be rejected and their motion to dismiss the Complaint should be denied.

### C.    Count I and II Adequately Allege Violations of Section 5(l) and Counts III-IV State Claims for Violations of Sections 5(a) and 12

In considering whether a Commission order has been violated, courts determine what the order means and whether the challenged advertisements are within its proscriptions.  *United States v. Reader's Digest Ass'n.,* 662 F.2d 955, 960 (3rd Cir. 1981); *see Daniel Chapter One*, 896 F. Supp. 2d at 14 ("In an action by the government to recover civil penalties, '[a]ll that the government need prove is that a cease and desist order has in fact been violated[.]'").  The Complaint attaches the Commission Order and quotes the specific provisions that the FTC alleges Defendants have violated.  Compl., Dkt. 1 at 5-6, 17-18, ¶¶ 14, 15, 29, 32, 33, 36.  In addition, the Complaint further details how those provisions have been violated.  *Id.* at 17-18, ¶¶ 30, 31, 34, 35.  Those reasons mirror the factual bases underlying Counts III and IV— specifically, that testimonials promising pain relief were neither substantiated by competent and reliable scientific evidence nor contained an appropriate disclosure, and that Defendants have misrepresented the "existence, contents, validity, results, conclusions, or interpretations of any test, study, or research" because the study they commissioned did not demonstrate that Gravity Defyer footwear was clinically proven to relieve pain.  *Id.* at 17-18*,* ¶¶ 31, 35.  Again, measured against the requisites of a violation of Section 5(*l*) of the FTC Act, Counts I and II of the

Complaint clearly state claims for purposes of Federal Rule of Civil Procedure 12(b)(6).  *See Reader's Digest*, 662 F.2d at 960*; Gutrejman*, 596 F. Supp. 3d at 6.

### 1.  Count I Adequately Alleges That Defendants Have Violated Part III of the Commission Order and Section 5(*l*) of the FTC Act

Defendants argue that Count I of the Complaint states only one alleged fact, a reproduction of a magazine advertisement located at Complaint ¶ 25B, and that "a single alleged fact" does not support a reasonable inference that Defendants violated Part III of the Commission Order.  Dkt. 15-1 at 21.  Those assertions, however, fail to address the well-pled allegations of the Complaint.  Complaint ¶ 25B alleges that Defendants' ad, with a testimonial by "Bill F." making health-related, back pain claims, ran for approximately two years, and Complaint ¶ 22 alleges that such ads appeared in nationally disseminated magazines.  Dkt. 1 at 8, 10.  Additionally, the Complaint makes clear that the excerpted advertisements are merely examples of Defendants' advertisements and that Defendants disseminated "[t]hese *and other advertisements*," which contained the excerpted statements and depictions "*among others.*"  Compl., Dkt. 1 at 8, ¶ 25 (emphasis added).  Together with other allegations of the Complaint, the FTC clearly explains how Gravity Defyer's user testimonials violate Part III of the Commission Order.

Defendants also argue that the user testimonial in Complaint ¶ 25B is limited to back pain.  Dkt. 15-1 at 22.  But paragraph 26 of the Complaint makes clear that the user testimonials Gravity Defyer disseminated were not so limited.  It states, "[t]hrough [user testimonials contained in advertisements for Gravity Defyer footwear], Defendants have claimed that Gravity Defyer shoes alleviate pain located in the knees, back, or feet, or associated with conditions such as plantar fasciitis, arthritis, or neuropathy."  The Complaint thus alleges the widespread use of

20

testimonials in Gravity Defyer's advertising, which included testimonials relating to numerous conditions and body parts, and which appeared in magazine advertisements and elsewhere. These specific, factual allegations must be accepted as true for purposes of a Rule 12(b)(6) motion. *See United States ex rel. Keaveney,* 219 F. Supp. 3d at 138; *Banneker Ventures,* 798 F.3d at 1129. [14]

The cases Defendants cite (Dkt. 15-1 at 21-22) are distinguishable because the pleadings in those cases failed either to identify the relevant advertisements at all or failed to plead why they were misleading. *See Salvador v. Allstate Prop. & Cas. Ins. Co.,* No. 19-2754, 2020 WL 7042843, at *3 (D.D.C. Nov. 30, 2020) (plaintiffs "identify no advertisements" and plead no facts regarding the supposed advertising campaign); *Cannon v. Wells Fargo Bank, N.A.,* 926 F. Supp. 2d 152, 174 (D.D.C. 2013) (dismissing several subparts of a count because the plaintiff did not identify any advertisements relating to that claim); *Smith v. Hartz Mountain Corp.,* No. 12-00662, 2012 WL 5451726, at *4 (N.D. Ohio Nov. 7, 2012) (plaintiffs do not identify specific advertising or marketing materials); *Implant Direct Sybon Int'l v. Zest IP Holdings, Inc.,* No. 11-2247, 2012 WL 1969292 (S.D. Cal. June 1, 2012) (plaintiff failed to explain what was false about the challenged advertisements). Here, the Complaint identifies specific ads, their approximate time frame, magazines and platforms where they appeared, the claims they contain, and why those claims violate the Commission Order.

---

[14] The allegations of Complaint ¶ 26 are also buttressed by the fact that other ads reproduced in the Complaint mention conditions other than back pain. *See, e.g.,* Complaint ¶ 25B (highlighting plantar fasciitis, arthritis, and heel and knee pain), ¶ 25E (neuropathy; foot, ankle, and knee pain; and other painful foot conditions), and ¶ 25I (plantar fasciitis). Should the Court nonetheless hold that the FTC must provide additional examples of testimonials in the Complaint, the FTC requests leave to amend the Complaint to include such advertising.

Nor does *Homeland Housewares, LLC v. Euro-Pro Operating LLC,* No. 14-03954, 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014), the case highlighted by Defendants, suggest a different conclusion.  In addition to being distinguishable for the same reasons as the cases cited above, the opinion suggests that the fake reviews were not clearly linked to the defendant in that case. *See id.* at *1 (referring to fake internet reviews that were "planted").  Here, of course, Defendants created and placed the ads at issue, which included user testimonials.  Not only should they have full knowledge of what those testimonials said and where and when they appeared, unlike the defendant in *Homeland Housewares*, but their knowledge is superior to the FTC's.

Defendants' final argument contests the FTC's allegation that "[t]hrough these [user] testimonials, Defendants have implied that the experiences described in the testimonials represent the typical or ordinary experiences of people who use the product."  Dkt. 15-1 at 22-23; Compl., Dkt. 1 at 17, ¶ 30.  This is a factual allegation, or a mixed allegation of fact and law, based on the FTC's interpretation of the testimonials at issue, and must be accepted as true for purposes of this motion. *See Smith v. United States,* 121 F. Supp. 3d 112, 117 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016) (the court "'must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor.'") (citations omitted).  It is, moreover, an interpretation that is well accepted.  "[W]hen an advertisement contains a testimonial reflecting the experience of an individual with a product, there is an implicit representation that such experience reflects the typical or ordinary results anyone may anticipate from use of the product." *FTC v. Bronson Partners, LLC,* 564 F. Supp. 2d 119, 125 (D. Conn. 2008) (citation omitted); *see In re Daniel*

*Chapter One,* No. 9329, 2009 WL 2584873, at *67 (FTC Aug. 5, 2009) (quoting same); Guides

Concerning Use of Endorsements and Testimonials in Advertising, 16 C.F.R. § 255.2(b). [15]

Defendants likewise attempt to argue that they do not need substantiation for user

testimonials, *see* Dkt. 15-1 at 23, but absent a disclosure that complies with Part III of the

Commission Order, the terms of the Order foreclose Defendants from making such an argument.

*See* Complaint, Dkt. 1 at 5-6, 17, ¶¶ 14, 29.  They cannot collaterally attack the Commission

Order now.  As this court explained in *Daniel Chapter One*, "it is well settled that a defendant

cannot attack a final cease and desist order in a subsequent enforcement proceeding."  896 F.

Supp. 2d at 14 (quoting *United States v. H.M. Prince Textiles, Inc.,* 262 F. Supp. 383, 388

(S.D.N.Y. 1966)).  Accordingly, for all the reasons stated above, Defendants' Motion to Dismiss

Count I should be denied.

### 2.   Counts II-IV State Claims for Relief Notwithstanding Defendants' Argument That They Have Accurately Reported Study Results

Although Defendants suggest that Counts II-IV do not state claims for relief because their

advertising claims "report exactly the results of" the study, Dkt. 15-1 at 24, reporting the results

of a flawed study does not somehow save Defendants from having disseminated false and

unsubstantiated advertising.  Rather, the issue is whether Defendants can substantiate, with

competent and reliable evidence, the advertising claims they have made about the health-related

benefits of their footwear.  The Complaint more than adequately alleges they have not.

---

[15] The authorities cited in Dkt. 15-1 at 23 are inapposite to this Rule 12(b)6) motion because they adjudicated motions for contempt and summary judgment, rather than issues concerning the sufficiency of pleadings.  Similarly, this Court should reject out of hand Defendants' argument about what consumers "likely understand" (*see id.*) as an impermissible attempt to argue the merits of the case.  *See Steele v. Goodman*, 382 F. Supp.3d. at 417.

Count II alleges that "Defendants, citing a study, have represented that Gravity Defyer footwear is clinically proven to relieve pain" when "[i]n fact, the study did not demonstrate that Gravity Defyer footwear was clinically proven to relieve pain." Compl., Dkt. 1 at 18, ¶¶ 34-35. As a result, Defendants are alleged to have violated Part IV of the Commission Order because they have misrepresented the "existence, contents, validity, results, conclusions, or interpretations of any test, study, or research." *Id.* at 6, 18, ¶¶ 15, 33. Similarly, Count IV, an establishment claim (also called a proof claim) as explained in Argument Section II.A above, alleges that Defendants have falsely represented "that Gravity Defyer footwear is clinically proven to . . . [r]elieve pain, including knee, back, ankle, and foot pain" and to reduce pain in those body parts by specific percentages. *Id.* at 20, ¶¶ 43-44. And Count III alleges that Defendants' representations that people who wear their footwear will experience significantly less pain, including by specific percentages in particular body parts, are false or misleading or were not substantiated at the time they were made. *Id.* at 19, 40-41. As shown in Argument Section III.A. above, the Complaint provides a myriad and non-exhaustive list of reasons why these representations are false, misleading, or unsubstantiated, and thus more than amply pleads legally cognizable causes of action in Counts II-IV. *Id.* at 16, ¶ 27.

Defendants also overlook the fact that Part IV of the Commission Order is broadly worded, and proscribes misrepresentations about "contents, validity, results, conclusions, or interpretations." Dkt. 1-1 at 6. The complaint paragraphs cited above plainly allege that Defendants have misrepresented the study, including its conclusions or interpretations, by claiming that it demonstrates that their footwear is clinically proven to relieve pain. In addition, the facts alleged in Complaint ¶ 27 lead to the inference that Defendants misrepresented the contents, validity, and results of the study by, among other things, failing to ensure adequate

double-blinding, failing to adequately control for other pain treatments, and failing to account for other related data.  Compl., Dkt. 1 at 16, ¶ 27. [16]  Similarly, the allegations of Counts III and IV, in conjunction with Complaint ¶ 27, more than adequately assert reasons why Defendants' efficacy claims are false or unsubstantiated and their "clinically proven" claims are false.  These well-pled factual allegations must be accepted as true, and Defendants' counterarguments rejected as impermissible attacks on the merits of this case.  *See* Argument Section I.A above. Accordingly, Defendants' arguments against Counts I, II, and IV should be rejected.

### III.   The Commission Order is Enforceable Under Section 5(*l*), Applies to Defendants' Alleged Conduct, and is Enforceable Against Both Defendants

#### A.   The Commission Order is Enforceable Under Section 5(*l*)

Defendants incorrectly argue that the FTC cannot bring an action under Section 5(*l*) for violations of the Commission Order after the Order has terminated.  This argument is contrary to the plain language of Section 5(*l*) and the Order itself.  The relevant question is not whether *the Complaint was filed* while the Commission Order was in effect, but whether the *alleged violations occurred* while it was in effect.  Because the Complaint alleges that Defendants violated the Commission Order while it was in effect, *i.e.*, from approximately 2016 to December 17, 2021, when the Order terminated, Defendants' argument fails.

Section 5(*l*) provides in relevant part:

Penalty for violation of order; injunctions and other appropriate equitable relief

Any person, partnership, or corporation **who violates an order of the Commission after it has become final, and while such order is in effect**, shall forfeit and pay to the United States a civil penalty of not more than

---

[16] *See, e.g., POM Wonderful*, in which the United States Court of Appeals for the D.C. Circuit favorably noted the Commission's finding of an omission of material fact based on the "selective touting of ostensibly favorable study results and nondisclosure of contrary indications from the same or a later study."  777 F.3d at 494.

$[50,120][17] for each violation, which shall accrue to the United States and
may be recovered in a civil action brought by the Attorney General of the
United States.

15 U.S.C. § 45(*l*) (emphasis added).

The phrase "while such order is in effect" is best read as applying to the timing of the

*defendant's* order violation, not the timing of the *plaintiff's* filing of a complaint under

Section 5(*l*).   Under this natural and logical reading, Section 5(*l*) creates a cause of action against

a person who violates an order of the Commission: (1) "after it has become final," and (2) "while

such order is in effect."[18]

This reading is fully consistent with accepted canons of construction.  "[A] limiting clause

or phrase should ordinarily be read as modifying only the noun or phrase that it immediately

follows.  If that noun or phrase does not fit, the limiting clause should then be read to modify the

nearest reasonable referent."  *City of Salisbury v. FERC*, 36 F.4th 1164, 1168 (D.C. Cir. 2022)

(internal quotations and citations omitted); *see Grecian Magnesite Mining, Indus. & Shipping*

---

[17] The statute originally set the maximum penalty at $10,000 per violation.  However, pursuant to
the Federal Civil Penalties Inflation Adjustment Act, this figure is now annually adjusted for
inflation.  *See United States v. Daniel Chapter One*, 89 F. Supp. 3d 132, 148 (D.D.C. 2015),
*aff'd*, 650 F. App'x 20 (D.C. Cir. 2016).  The current maximum penalty is $50,120.  16 C.F.R.
§ 1.98(c).

[18] This court implicitly agreed with this view in *Daniel Chapter One,* 89 F. Supp. 3d at 144,
when it treated the requirement of an in-effect order as applying to the occurrence of the
defendant's violation.  In that case, the FTC issued a final order on January 25, 2010, but the
order did not become effective until April 2, 2010.  *Id.* at 138-39.  This court, in assessing
whether the defendants were subject to penalties under section 5(*l*), explained: "From April 2,
2010, **when the FTC Order went into effect**, until May 24, 2012, when the defendants came
into compliance with the FTC Order, the defendants intentionally and knowingly violated the
FTC Order."  *Id.* at 144 (emphasis added).

26

*Co., SA v. Comm'r*, 926 F.3d 819, 824 (D.C. Cir. 2019) ("ordinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest."). [19]

Here, "*while such order is in effect*" is best read as qualifying the immediately preceding phrase, "*who violates an order of the Commission after it has become final.*"  The use of the word "and" between the two clauses further reinforces this reading.  Defendants' interpretation, by contrast, treats "*and while such order is in effect*" as qualifying "*in a civil action brought,*" but that phrase appears much later in the paragraph, after unrelated language about the amount of the penalty and to whom it must be paid.  Such a reading of the statute is unnatural and illogical. [20]

Defendants' position also contradicts the language of the Commission Order itself, which specifically acknowledges, and therefore permits the FTC to file, a post-order-termination lawsuit based on pre-order-termination conduct.  Part X of the Order provides in relevant part:

> This order will terminate on December 17, 2021, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that **the filing of such a complaint will not affect the duration of**:
>
> …
>
> **C**.  **This order <u>if such complaint is filed after the order has terminated pursuant to this Part</u>**.

---

[19] Although the "nearest reasonable referent" canon is technically a canon of statutory interpretation, it may also be used when interpreting contracts.  *Travelers Indem. Co. v. Mitchell*, 925 F.3d 236, 243 (5th Cir. 2019); *USAA Cas. Ins. Co. v. Calderon*, 818 F. App'x 828, 831 (10th Cir. 2020).

[20] Contrary to Defendants' argument (Dkt. 15-1 at 38), no court has ever "required" that an order be in effect at the time an action under 5(*l*) is filed.  Defendants mischaracterize dicta and stray, out-of-context comments from cases that, while perhaps using the phrase "in effect," were not presented with, and therefore did not decide, the issue.  *See* cases cited at Dkt. 15-1 at 38-39.  Thus, those cases do not aid Defendants' position.

Dkt. 1-1 at 7 (emphasis added).  In other words, Part X.C. of the Commission Order clarifies that the duration of the Order is not extended if the FTC files a complaint based on an order violation after the Order has terminated.  But, in doing so, the provision clarifies that the FTC may file a complaint "alleging any violation of the order," even "after the order has terminated"—exactly what the FTC has done here.

Having found no basis in the text of Section 5(*l*) or the Commission Order itself, Defendants finally point to a Policy Statement and Final Rule, as well as orders entered in other cases, to bolster their unsupported position that an order must be in effect at the time an action under Section 5(*l*) is filed.  Dkt. 15-1 at 39-40.  However, the Policy Statement makes the *exact opposite* point that Defendants attribute to it, in that it recognizes that the FTC *can* file a post-order-termination lawsuit based on pre-order-termination conduct.  It states:

> A five year statute of limitations applies to civil penalty actions filed in federal court pursuant to section 5(*l*) of the FTCA.  *See* 28 U.S.C. 2462.  Therefore, **it is conceivable that the government could file a complaint up to five years after an order has terminated challenging violations that occurred while the order was in force.**

60 Fed. Reg. 42,569, 42,571, n.8 (emphasis added).

The Complaint alleges that the Defendants have been violating the Commission Order since at least 2016.  *See* Dkt. 1 at 7, ¶ 18.  Because of the termination provision, the FTC cannot obtain relief for violations of the Commission Order that occurred *after* December 17, 2021, and is not seeking to do so.  However, the FTC can obtain relief for violations of the Commission Order that occurred *before* December 17, 2021.  Defendants' hyperbolic statement that the FTC is seeking to "reinterpret its enabling statute to allow for perpetual enforcement" is thus entirely inaccurate.  Dkt. 15-1 at 41.  The FTC's effort to address violations of the Commission Order in this case is not perpetual; it is consistent with Section 5(*l*), the statute that enables it to enforce

such violations, and the relevant statute of limitations, 28 U.S.C. § 2462.  The FTC filed this suit within five years of alleged violations of the Commission Order, which was both final and in effect, within the meaning of Section 5(*l*), when those violations occurred.  Accordingly, Defendants' arguments that this suit cannot be brought under Section 5(*l*) lack merit. [21]

### B.    The Plain Language of Parts III and IV of the Commission Order Apply to Any Product, Including Footwear

Notwithstanding the use of the broad, unambiguous term "any product" in Parts III and IV of the Commission Order, Defendants argue that these parts of the Order do not apply to footwear, but only to fuel-saving and emissions-related products.  Dkt. 15-1 at 35-38.  This argument fails for the simple reason that "any product" is an unambiguous term that means exactly what it says.  In addition, it should be rejected because Defendants may not collaterally attack the terms of an order to which Defendant Elnekaveh voluntarily agreed.

Contrary to Defendants' argument (Dkt. 15-1 at 35-36), there is no textual basis for applying Part I's specific product language ("any fuel-line magnet, or any purported fuel-saving or emissions-reducing product for use in conjunction with a motor vehicle") to the term "any product" in Parts III and IV.  Where a document "use[s] one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Gibson v. Off. of Pers. Mgmt.*, 825 F. App'x 890, 892 (Fed. Cir. 2020) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012)).  If Parts III and IV were intended to apply only to fuel or emissions-related products, they would have used the same

---

[21] While the blog post Defendants cite is hardly legal authority, it is worth noting that it can be interpreted to say the opposite of what Defendants' claim, as their interpretation assumes two very unlikely premises:  that Kaufman both miscounted and that he is unaware of 28 U.S.C. § 2462.  *See* Dkt 15-1 at 40 n.18; https://www.adttorneyslawblog.com/ftc/ftc-defendants-stumble-after-a-disorderly-race-to-the-courthouse/

product term as Part I.  Instead, Parts III and IV use a broader product term, clearly indicating the parties' intention that Parts III and IV be interpreted to reach "any product."

Contrary to Defendants' suggestion, the FTC is not asking the Court to "assume" that Parts III and IV of the Commission Order apply to "any product."  Dkt. 15-1 at 35.  Rather, the FTC adequately pleads that Defendants violated that Order, including its unambiguous "any product" provisions.  Consistent with the standard for Rule 12(b)(6) motions, the Court must accept those well-pled allegations.  And even if Defendants were correct that the term "any product" is somehow ambiguous, that would not provide grounds for dismissal; dismissal would be warranted only if *Defendants'* proposed interpretation were "clear and unambiguous," which, for all the reasons stated above, it obviously is not.  *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012) (claim alleging violation of settlement agreement should not be dismissed unless language clearly and unambiguously supports moving party's interpretation; otherwise, there is an issue of fact not subject to resolution on a motion to dismiss).

Finally, Defendants suggest the Commission Order's provisions applicable to "any product" were not "reasonably related" to the underlying violations, and therefore are impermissible.  Dkt. 15-1 at 36-37.  But Defendant Elnekaveh, with the assistance of legal counsel, voluntarily consented to the Commission Order, Dkt. 15-4 at 8, and thus Defendants cannot now attack its validity.  As explained by another judge in this district:

> "The enforcement responsibility of the courts, once a Commission order has become final ... is to adjudicate questions concerning the order's violation, not questions of fact which support that valid order." *Id.* . . . *see also United States v. H.M. Prince Textiles, Inc.*, 262 F.Supp. 383, 388 (S.D.N.Y.1966) ("[I]t is well settled that a defendant cannot attack a final cease and desist order in a subsequent enforcement proceeding."); *United States v. Vitasafe Corp.*, 212 F.Supp. 397, 398 (S.D.N.Y.1962) (same). In an action by the government to recover civil penalties

"[a]ll that the government need prove is that a cease and desist order has in fact been violated[.]" *H.M. Prince Textiles*, 262 F.Supp. at 388.

*United States v. Daniel Chapter One*, 896 F. Supp. 2d 1, 14 (D.D.C. 2012); *see United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (consent decree "must be construed as it is written, and not as it might have been written…."). [22]

The Commission's Order is clear; Parts III and IV say that they apply to "any product" and the Order means what it says.  Accordingly, the Order provisions at issue here are not limited to fuel-saving or emissions-related products but reach Defendants' footwear products as well.

### C.   Gravity Defyer Can Be Held Liable for Violating the Commission Order [23]

Although Gravity Defyer was not a party to the Commission Order, it can still be held liable for violating it under Fed. R. Civ. P. 65(d)(2)(C) for two, independent reasons: (a) its identity of interest, or privity, with Defendant Elnekaveh, *see United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1136 (D.C. Cir. 2009) (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945)); *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015); and (b) because it aided and abetted, or acted in active concert or

---

[22] Moreover, the Commission Order at issue in this case is consistent with many FTC orders, which typically include product coverage that is broader than the specific product at issue.  It is well-established that "'those caught' violating the FTC Act 'must expect some fencing in.'" *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (*quoting FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957)).  Of course, one reason to include fencing in relief, and why it was intentionally done here with the "any product" language in Parts III and IV of the Commission Order, was to avoid the situation allegedly present in this case:  the person subject to the order engages in the same violative conduct in connection with a different product.

[23] Defendants assert that the claimed inapplicability of the Order to Gravity Defyer provides a basis to "dismiss all claims" against Gravity Defyer.  Dkt. 15-1 at 34.  This is incorrect, as Counts III and IV of the Complaint allege violations of Section 5(a) of the FTC Act and are not based upon violations of the Commission Order.  Dkt. 1 at 18-20, ¶¶ 37-45.

participation with, Defendant Elnekaveh to violate the Commission Order. *See Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC,* 985 F. Supp. 2d 23, 31 n.6 (D.D.C. 2013), *appeal dismissed on other grounds*, 776 F.3d 1 (D.C. Cir. 2015) (a nonparty that acts "in active concert or participation with," or aids and abets, a party in violating an order, can be held liable); *S.E.C. v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C.), *aff'd*, 410 F. App'x 346 (D.C. Cir. 2010).   Thus, Defendants' argument that the Complaint fails to state claims against Gravity Defyer must be rejected.

A non-party is subject to an order when it has a close relationship with a party, such that it is "identified in interest" or "in privity" with the party. *Philip Morris USA*, 566 F.3d at 1136 (citing *Regal Knitwear*, 324 U.S. at 14).   This court has held that an individual and a corporation that is "substantially dominated, directed and controlled by" him are in privity, such that an injunction against one automatically applies to both. *Washington Metro. Area Transit Comm'n*, 776 F.3d at 9-10 (*quoting Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963)).

The Complaint alleges that Defendant Elnekaveh is the "founder, chairman, president, secretary, and sole owner of Gravity Defyer," and that he has "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Gravity Defyer, including the acts and practices set forth in this Complaint."  Compl., Dkt. 1 at 3, ¶ 7.  It further alleges that he "has overseen daily operations of [Gravity Defyer], including (a) product development, (b) business strategy, and (c) approval of advertising and marketing materials," and that he "(a) conceived of, (b) decided to fund, and (c) participated in formulating a protocol for, clinical research on the VersoShock sole that has been cited in Gravity Defyer ads." *Id*.  Thus, the Complaint alleges facts sufficient to show that Gravity Defyer was "substantially dominated,

directed and controlled by" Defendant Elnekaveh, such that an identity of interest or privity

exists between them.  *See Washington Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 31

(enjoined individual and non-party corporation owned and controlled by that individual held to

be in privity, such that injunction against individual also applied to corporation).  Gravity Defyer

is therefore subject to the Commission Order and may be held liable for violating it.

In addition, a non-party may be liable for violating an order if it "actively aid[s] and

abet[s] a party in violating that order." *Bilzerian*, 613 F. Supp. 2d at 73; *Washington Metro. Area*

*Transit Comm'n*, 985 F. Supp. 2d at 31, n.6 (holding non-party subject to injunction based on its

"active concert or participation" with, and "aiding and abetting" of, party); *FTC v. Mytel Int'l,*

*Inc.,* No.2:87-CV-07259, 2022 WL 3350391 (C.D. Cal. Aug. 11, 2022) ("Although Feldman was

not placed under the 1988 Order, Feldman is a proper defendant for the Contempt Motion under

Rule 65(d)(2) because he allegedly had actual notice of the 1988 Order and participated . . . in

the unlawful behavior.").  The Complaint alleges that Defendant Gravity Defyer acted in active

concert or participation with Defendant Elnekaveh in violating the Commission Order.  Compl.,

Dkt. 1 at 3, 7-20, ¶¶ 6, 17-45.  Specifically, it alleges that Defendant Gravity Defyer, at

Defendant Elnekaveh's direction, disseminated deceptive advertisements for Gravity Defyer

footwear in violation of the Commission Order.  *Id.* at 7-19, ¶¶ 18-39.  These allegations are

sufficient to state a claim against Gravity Defyer under an "aiding and abetting" or "active

concert or participation" theory.  *See Washington Metro. Area Transit Comm'n*, 985 F. Supp. 2d

at 31, n.6.

The Complaint also adequately pleads Gravity Defyer's knowledge of the Commission

Order, which is required under an aiding and abetting theory of non-party liability.  *Bilzerian*,

613 F. Supp. 2d at 70, 72-73.  Defendant Elnekaveh, as a signatory to the Commission Order and

33

a principal of Gravity Defyer, clearly had knowledge of the Commission Order.  Compl., Dkt. 1

at 3, 6-7, ¶¶ 7, 16-17.  And as Gravity Defyer's founder, chairman, president, secretary, and sole

owner, Defendant Elnekaveh's knowledge of the Commission Order is imputed to Gravity

Defyer.  *See Washington Metro. Area Transit Comm'n*, 776 F.3d at 9, n.8 (president and sole

shareholder of corporation "cannot plausibly claim that [corporation] lacked actual notice of the

injunction") (internal quotations omitted); *FTC  v. Data Med. Cap., Inc.*, No. 99-1266, 2010 WL

1049977, at *20 (C.D. Cal. Jan. 15, 2010) (where "company's officer and manager" had

knowledge of, and was subject to, injunction, his knowledge of injunction is imputed to

company); *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1080, n.18 (E.D. Mo. 2007), *aff'd*, 580

F.3d 769 (8th Cir. 2009) ("since Reed and Neiswonger both had actual knowledge of the 1997

Permanent Injunction, and they were officers of APGI, Inc., . . . such knowledge may be imputed

to their corporate business entity."); *FTC v. Acquinity Interactive*, LLC, No. 14-60166-CIV,

2021 WL 4840585, at *6 (S.D. Fla. Sept. 29, 2021) ("As to the Corporate Defendants, . . . these

entities had actual notice of the . . . Order, as such knowledge was imputed through their

[corporate officers].").

Defendants are incorrect in suggesting that Gravity Defyer is liable only if it knew it was

violating the Commission Order.  Dkt. 15-1 at 33.  Although knowledge is required to hold a

non-party liable under an aiding and abetting theory, [24] it is knowledge "of the injunction," not

knowledge that the conduct at issue violates the injunction.  *See Goya Foods, Inc. v. Wallack*

---

[24] There is effectively no separate knowledge requirement under the privity theory of liability, as
two persons in privity, or legally identified, with one another will necessarily have the same
knowledge.  *See Washington Metro. Area Transit Comm'n*, 776 F.3d at 9, n.8 (holding that non-
party had knowledge of injunction "[f]or the same reason" that it was in privity with party
subject to injunction).  But even if such a requirement exists, the FTC has established Gravity
Defyer's knowledge of the Commission Order as discussed above.

*Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002) (affirming contempt against non-parties who knew of order, but believed it had lapsed, because "those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments"); *Bilzerian*, 613 F. Supp. 2d at 72-73 (non-party who had "actual notice of the order" held in contempt, despite claim that he "reasonably relied" on other party's interpretation of order); *Philip Morris*, 566 F.3d at 1136 (requiring "actual notice *of the injunction*") (emphasis added).[25]

The Complaint alleges that Gravity Defyer is in privity with Defendant Elnekaveh, that it acted in active concert or participation with Defendant Elnekaveh in violating the Order, and that it had knowledge of the Commission Order. Thus, under the authorities set forth above, the Complaint adequately alleges Gravity Defyer's liability for violating the Commission Order.

---

[25] None of the cases cited by Defendants (Dkt. 15-1 at 33) establish that non-party aiding-and-abetting liability requires that the non-party know that its conduct violated an order. *See Golden State Bottling Co. v. Nat'l Labor Rel. Board*, 414 U.S. 168, 181 (1973) (holding that a successor need only "knowledge of the pendency of the unfair labor practice litigation."); *Washington Metro. Area Transit Comm'n*, 776 F.3d at 9, n.8 (holding that a non-party corporation need only have "actual notice of the injunction," not knowledge that it was violating the injunction (internal quotations omitted); *ADT LLC v. NorthStar Alarm Servs., LLC,* 853 F.3d 1348, 1353 (11th Cir. 2017) (requiring only that the non-party "knew about the injunction," not that it knew that its conduct violated the injunction); *Acquinity Interactive*, 2021 WL 4840585, at *4 (a non-party must have "knowledge of the mere existence of the injunction; not its precise terms.") (internal quotations omitted).

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss

Complaint (Dkt. 15).

Dated: <u>April 21, 2023</u>                          Respectfully submitted,

                                       */s/ Maria Del Monaco*
                                       Maria Del Monaco, OH Bar 0067930
                                       mdelmonaco@ftc.gov, (216) 263-3405
                                       Dana C. Barragate, OH Bar 0065748
                                       dbarragate@ftc.gov, (216) 263-3402
                                       Mathew M. Scheff, OH Bar 0082229
                                       mscheff@ftc.gov, (216) 263-3414
                                       Adrienne M. Jenkins, OH Bar 0089568
                                       ajenkins@ftc.gov, (216) 263-3411
                                       Federal Trade Commission
                                       1111 Superior Avenue, Suite 200
                                       Cleveland, OH 44114
                                       (216) 263-3426 (fax)

                                       Attorneys for Plaintiff
                                       Federal Trade Commission

## CERTIFICATE OF SERVICE

I hereby certify on April 21, 2023, that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

/s/ Maria Del Monaco_____
Attorney for Plaintiff
Federal Trade Commission